UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TECHGUARD SECURITY, L.L.C., | ) | |
| | ) | |
|     Plaintiff and Counterclaim | ) | |
|     Defendant, | ) | |
| | ) | |
| vs. | ) | Case No. 4:08CV1489 AGF |
| | ) | |
| JAMES B. JOYCE, | ) | |
| | ) | |
|     Defendant and Counterclaim | ) | |
|     Plaintiff. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court[1] on the following motions:

(1) Defendant James Joyce's ("Joyce") motion for summary judgment on Counts I, III, X, and XI of Plaintiff TechGuard, L.L.C.'s ("TechGuard") second amended complaint (Doc. #16);

(2) TechGuard's cross motion for summary judgment on Count I of the second amended complaint (Doc. #29);

(3) Joyce's motion to stay TechGuard's motion for summary judgment pending resolution of another lawsuit and pending action by the United States Patent and Trademark Office ("PTO") on certain patent applications (Doc. #42).

(4) Joyce's motion to dismiss Counts VIII, IX, and X of the second amended complaint (Doc. #14); and

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

(5) Joyce's motion to stay proceedings in this case (Doc. #33).

Count I, which is the pivotal count of the second amended complaint, seeks declaratory judgment that TechGuard is the owner of computer-related methods/inventions described in a patent issued to Joyce on February 11, 2003, as well as in patent applications filed by Joyce on August 15, 2006, and by TechGuard on November 1, 2006. For the reasons set forth below, TechGuard's motion to stay shall be denied, and the motions for summary judgment with respect to Count I shall be granted in part and denied in part, with the Court ruling substantially in TechGuard's favor. The other motions shall be resolved as set forth below.

## BACKGROUND

The record establishes the following. Sometime prior to February 2000, James Joyce, an Arkansas resident, invented computer "Heuristic Firewall" technology, a method for providing firewall security to computers. On or around February 2000, Joyce, his then-wife, and one or two other individuals formed TechGuard, a Missouri corporation whose business was to develop and provide computer and network security products. On or about February 22, 2000, TechGuard and Joyce executed two agreements:

(1) a Confidentiality and Invention Rights Agreement ("Rights Agreement") pursuant to which all technology Joyce developed "during the period of company involvement" would belong to TechGuard. This agreement provided that Joyce assigned to TechGuard his "right, title, and interest in all Inventions and Proprietary Information,

2

which shall remain the sole and exclusive property of [TechGuard]." "Inventions" was defined as "any invention, development and/or improvements, whether or not patentable . . . which are conceived, developed or reduced to practice . . . during the Period of Company Involvement."

Proprietary Information was defined as including "inventions, potential product applications and uses, [and] computer programs and research efforts related thereto." The Rights Agreement stated that it did not apply to "inventions or discoveries made or conceived of and set forth in a tangible medium of expression by [Joyce] prior to the date of this Agreement," and specifically excluded the "entire right, title and interest in and to the METHODS AND APPARATUS FOR HEURISTIC FIREWALL, invented by [Joyce]." (Doc. #1-2.)

(2) a Transfer Agreement which transferred to TechGuard all of Joyce's and his then-wife's rights to assets relating to TechGuard's business. These assets were specified as including "all intellectual property rights, plans, methods . . . and the like heretofore developed with respect to" TechGuard's business, subject to the provision that Joyce was "the owner of an invention relating to a neural firewall" and that this invention was not assigned to TechGuard, but that instead, Joyce would grant TechGuard an exclusive, royalty-free license to this invention. (Doc. #27-2.)

On April 14, 2000, Joyce individually filed U.S. Patent Application No. 09/549,417 ("'417 Application") for "Methods and Apparatus for Heuristic Firewall." On January 1, 2001, the parties signed a Patent License Agreement ("PLA") which

3

granted TechGuard an exclusive license to all patents "relating to" the '417 Application, and "any resulting patents now owned or hereafter developed." The PLA provided in part as follows: "This license and all agreements referenced herein are the entire agreement between the parties concerning its subject matter, and supercedes all prior discussions, correspondence and agreements." (Doc. #14-2.) On February 11, 2003, Joyce was issued U.S. Patent No. 6,519,703, ("'703 Patent") (Doc. #6-5), based on the '417 Application.

Approximately three years later, on February 16, 2006, TechGuard filed U.S. Provisional Patent Application No. 60/773,820 ("'820 Application") for "Methods and Apparatus for Heuristic/Deterministic Finite Automata" ("H/DFA"),[2] listing Joyce and another of TechGuard's employees as the two inventors. The application explained that "current firewall, access control list, and other security related technology implementations" were not adequate. The application referenced the '703 Patent as describing heuristic programming mechanisms. (Doc. #19-2.)

On August 15, 2006, Joyce, as an individual, filed U.S. Patent Application No. 11/464,772 ("'772 Application") for H/DFA, listing himself as the sole inventor. (Doc. #10-6 - '722 Application as published by the PTO). This application claimed the benefit of the '820 Application and it is undisputed that it is substantially similar to the '820 Application. On or about September 30, 2006, TechGuard terminated Joyce's

---

[2] Also referred to by the parties as "HIPPIE" technology.

employment. On November 1, 2006, TechGuard filed U.S. Patent Application No. 11/591,802 ("'802 Application") in follow-up to its provisional '820 Application. TechGuard did not list Joyce as an inventor. On September 17, 2007, Joyce was divorced. The record shows that TechGuard's ex-wife received 50% of the '703 Patent. (Doc. #17-3.)

On September 12, 2008, Joyce filed a lawsuit, <u>Joyce v. Armstrong Teasdale, LLP</u>, No. 4:08CV1390 CEJ, against the law firm involved in the formation of TechGuard as a company. The law firm, Armstrong Teasdale, LLP, had represented both Joyce and TechGuard when TechGuard was formed as a company and when Joyce signed the PLA. Joyce claimed that the law firm was negligent in failing to inform him of a conflict of interest between himself and TechGuard, and asserted that the joint representation resulted in a loss of rights that he should have maintained, and resulting licensing fees from those rights.

TechGuard filed the present action on September 26, 2008. In Count I of its 11-count second amended complaint TechGuard seeks a declaratory judgment under the Rights Agreement that TechGuard owns the methodologies/products described in Joyce's '703 Patent and any other patents deriving from Joyce's '772 Application "or others." TechGuard asserts that it would be irreparably harmed if Joyce is permitted to continue to prosecute his '772 Application. Apparently confusing the '703 Patent with the '772 Application, TechGuard, at one point, asks the Court to declare that the '703 Patent is null and void. TechGuard requests "a judicial determination and declaration of the

respective rights and duties of the parties . . . regarding said patent applications and/or patents." (Doc. #9 at 10-11.)

Count II of TechGuard's second amended complaint is for a declaratory judgment that Joyce was not an inventor of the methods/invention underlying the '772 Application, and that the '772 application is null and void. The remaining counts assert state law claims for breach of contract - the Rights Agreement (Count III); constructive trust (Count IV); conversion (Count V); breach of fiduciary duty (Count VI); fraudulent concealment in failing to inform TechGuard of the filing of the '772 Application (Count VII); violation of Missouri's Computer Tampering Act, Mo. Rev. Stat. § 569.095-569.099, and the federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. (Counts VIII and IX); and assault, harassment, terrorizing, and stalking (Count X); and the final count requests injunctive relief enjoining Joyce from engaging in activities prohibited by the Rights Agreement (Count XI). In some of these counts, TechGuard seeks punitive damages as well as other relief. TechGuard does not mention the PLA or the Transfer Agreement in its second amended complaint.

Joyce filed a counterclaim in which he stated that TechGuard fired him on September 30, 2006. (Doc 13-2, ¶ 71.) Count I of the Counterclaim seeks a declaratory judgment that the Rights Agreement was superceded by the PLA; Count II seeks a declaratory judgment that Joyce is the inventor of the methods/inventions described in his

'772 Application and in TechGuard's '802 Application (Count II).[3]

## ARGUMENTS OF THE PARTIES

Joyce asserts that this case should be stayed pending action by the PTO on the H/DFA patent applications. He states that all the "extremely technical issues" involved in this lawsuit "would be more productively and cost efficiently resolved with the [PTO] first before this Court addresses the contractual issues," and that there is "no pressing reason why this lawsuit needs to progress." Joyce also asserts that a stay is warranted pending resolution of his malpractice action against Armstrong Teasdale, LLC, because he "intends to defend some of the claims against him," including the claim for punitive damages with evidence that he failed to receive proper legal advice from Armstrong Teasdale, LLC, and it would be "redundant" for this Court to address that issue.

TechGuard argues that under the unambiguous terms of the Rights Agreement, Joyce assigned to TechGuard his ownership rights to the inventions and intellectual property described in the H/DFA patent applications, and that there exist no genuine issues of material fact on this matter. TechGuard makes no mention of its claim in Count I that TechGuard owns the '703 Patent.

Joyce argues that the PLA superceded the Rights Agreement by virtue of the above-quoted merger clause in the PLA, that all agreements referenced therein were the

---

[3] The remaining counts of the Counterclaim assert state law claims of constructive trust (Count III) and conversion (Count IV), and seeks injunctive relief enjoining TechGuard from pursuing its '802 Application. (Doc. #13-2.)

entire agreement between the parties concerning the PLA's subject matter, and superceded "all prior discussions, correspondence and agreement." Thus, Joyce argues, he is free and clear of the Rights Agreement.

In a separate motion, Joyce asks the Court to stay ruling on TechGuard's motion for summary judgment so that he can engage in discovery on the disputed factual issues of when he began and ended his employment with TechGuard, just when the Rights Agreement and Transfer Agreement were entered into, whether he or TechGuard instigated the filing of the '820 Application, and the intent of the parties in entering into the PLA and the Transfer Agreement. Joyce attests by affidavit that he believes that with discovery, he will be able to show that TechGuard intended to terminate him "many months before September 2006, and that he was "effectively" terminated "many months before September, 2006." (Doc. #42-2 at 2.)

The parties' arguments with regard to Counts III, VIII, IX, X, and XI of the second amended complaint will be discussed below.

## DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the

record. Hansen v. Qwest Commc'ns, 564 F.3d 919, 923 (8th Cir. 2009).

Count I essentially involves a contract dispute. The nature of this dispute does not change simply because the contract at issue concerns a patent license. See Boggild v. Kenner Prods., Div. of CPG Prods. Corp., 853 F.2d 465, 468 (6th Cir. 1988) (holding that an action to enforce or set aside a contract concerning patent rights arises under contract law, not patent law); Green Edge Enters., L.L.C. v. Int'l Mulch Co., No. 4:09 CV 120 DDN, 2009 WL 882090, at *4 (E.D. Mo. March 30, 2009).

Missouri law applies to this contract dispute, and the task of this Court is to attempt to predict how Missouri's highest court would resolve the issues related thereto. STL 300 N. 4th, LLC v. Value St. Louis Assocs., L.P., 540 F.3d 788, 792 (8th Cir. 2008) (citation omitted). Interpretation of a contract is a question of law in Missouri, and the primary rule "is to ascertain the intention of the parties and to give effect to that intention." Id. In determining the parties' intentions, the terms of a contract are read as a whole and are given "their plain, ordinary, and usual meaning." Id. All provisions of a contract must, if possible, be given effect, and a contract should be given a reasonable construction. Id.

**Joyce's Motion to Stay this Action**

Joyce asks the Court to stay this case pending resolution of Joyce v. Armstrong Teasdale, LLP, and pending action by the PTO on the H/DFA patent applications. A district court's power to stay proceedings is broad and discretionary. Fisher Controls Co. v. Control Components, Inc., 443 F. Supp. 581, 581 (S.D. Iowa 1977).

> "A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants. The exertion of this power calls for the exercise of sound discretion. Where it is proposed that a pending proceeding be stayed, the competing interests which will be effected by the granting or the refusal to grant a stay must be weighed. Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."

Id. at 581-82 (noting specifically that federal courts have discretion to grant stays of limited duration pending the outcome of PTO determinations) (quoting CMAX, Inc. v. Hall, 300 F.2d 265 (9th Cir. 1962)).

The Court does not believe that this case should be stayed at this point pending action by the PTO on the H/DFA patent applications. The claims in Count I are contract claims which can be addressed without knowing how the PTO will act on the H/DFA patent application. Little purpose of judicial efficiency and conservation of resources will be served by staying ruling on the motions now before the Court. Likewise, the interests of the litigants will not be advanced by such a stay.

The Court also concludes that this action need not be stayed at this point pending resolution of Joyce v. Armstrong Teasdale, LLP. Even if one assumes that Armstrong Teasdale, LLP, was negligent in advising Joyce to sign the PLA, the validity of that agreement, or of any other agreements entered into between the parties, is not challenged. None of the issues now before the Court would be affected by the outcome of Joyce v. Armstrong Teasdale, LLP. If it later becomes prudent to await the outcome of that case

before proceeding in the present lawsuit, a stay could always be issued at that time.

**<u>The Parties' Ownership Rights</u>**

The Court first concludes that it is clear from the record that TechGuard has no ownership rights to the '703 Patent. In fact, although TechGuard claims such rights in Count I itself, it does not pursue this claim on summary judgment. The Rights Agreement, the Transfer Agreement, and the PLA all specifically reserve for Joyce this ownership interest. The Court concludes, however, that ownership of the H/DFA technology underlying Joyce's '772 Application and TechGuard's '820 Application belongs to TechGuard. The Rights Agreement unambiguously covers the inventions described in these patent applications. Joyce's argument pertaining to the merger clause is unpersuasive. The PLA's above-quoted merger clause related to the subject of PLA, namely, the licensing of the relevant patents and inventions, and not to their ownership. As such, the Court finds that the PLA did not abrogate the assignment of ownership rights contained in the Rights Agreement.

Although Joyce asserts that the Court should withhold determining these rights pending further discovery, none of the factual disputes identified by Joyce as requiring further discovery are relevant to these rulings. Joyce's argument that discovery would reveal that TechGuard terminated him months before September 30, 2006 is foreclosed by his assertion in his counterclaim that TechGuard terminated him on September 30, 2006. Furthermore, Joyce does not dispute that the H/DFA technology was developed while he was still an employee of TechGuard.

11

Accordingly, Joyce's motions for a stay shall be denied, and the cross motions for summary judgement on Count I of the second amended complaint shall be granted in part and denied in part to declare that (i) TechGuard has no ownership rights to the '703 Patent, but (ii) TechGuard is the rightful owner of the H/DFA patent applications and the inventions described therein.

The above conclusions also govern resolution of Joyce's motion for summary on Counts III and XI of the second amended complaint, in which TechGuard asserts, respectively, that Joyce breached the Rights Agreement and that TechGuard is entitled to injunctive relief enjoining any further breach.

**Counts VIII and IX (violation of state computer tampering act and of CFAA), and X (assault and harassment)**

As noted above, Joyce also seeks dismissal of Counts VIII, IX, and X, or for a more definite statement on these three counts; and summary judgment on Counts X and XI. Joyce argues that Counts VIII and IX should be dismissed because in his divorce proceedings, he and his ex-wife released each other from any and all claims as of July 20, 2007. Joyce maintains that he and his ex-wife intended to include claims by or against TechGuard. Joyce further argues that he did not violate the state or federal computer abuse laws by accessing his ex-wife's personal email account, as alleged by TechGuard. TechGuard argues that the release agreement only applied to claims by Joyce against TechGuard and Joyce's ex-wife, and claims by Joyces' ex-wife against Joyce, but not to claims by TechGuard against Joyce. TechGuard also argues that since it was not a party

to the divorce proceedings, it cannot be bound by the release agreement.

Upon review of the record, the Court concludes that Joyce is not entitled to dismissal of Counts VIII and IX. The allegations in the complaint regarding Joyce's alleged computer abuse go well beyond his accessing his ex-wife's personal email account. TechGuard alleges, for example that Joyce destroyed from his company laptop information belonging to TechGuard. The Court concludes that TechGuard has sufficiently pled causes of action in Counts VIII and IX. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") Joyce's argument based upon the divorce release cannot form the basis of a motion to dismiss, as it is based on facts beyond the pleadings.

In Count X of the second amended complaint, TechGuard alleges that Joyce has repeatedly threatened, stalked, harassed, and verbally abused employees of TechGuard, and that as a result TechGuard and its employees have suffered "fright, shock and extreme mental anguish." TechGuard further alleges that as a result of this intentional and malicious behavior by Joyce, TechGuard incurred expenses in "further securing" TechGuard's computer systems and networks and premises. Joyce correctly argues that a limited liability company such as TechGuard, cannot suffer psychological injury. See, e.g., Caso v. Hartford Cas. Ins. Co., 2008 WL 1970024, at *4 n.9 (E.D. Cal. May 2, 2008) (holding that a business entity cannot suffer emotional distress and lacks standing

to pursue tort of intentional infliction of emotional distress) (citations omitted). Joyce, however, does not address TechGuard's claim for damages due to its alleged expenditure of funds to secure its computer network and premises due to TechGuard's behavior. This aspect of Count X will accordingly not be dismissed at this stage of the proceedings.

## CONCLUSION

The central conclusion of the Court is that TechGuard has no ownership rights to the '703 Patent, and that TechGuard is the rightful owner of the H/DFA patent applications and the inventions described therein.

Accordingly,

**IT IS HEREBY ORDERED** that Joyce's motion to stay this action is **DENIED**. [Doc. #33]

**IT IS FURTHER ORDERED** that Joyce's motion for summary judgment on Counts I, III, X, and XI of Plaintiff's second amended complaint is **GRANTED** in part and **DENIED** in part, consistent with the rulings of the Court herein. [Doc. #16]

**IT IS FURTHER ORDERED** that Joyce's motion to stay TechGuard's motion for summary judgment on Count I of its second amended complaint is **DENIED**. [Doc. #42]

**IT IS FURTHER ORDERED** that TechGuard's motion for summary judgment on Count I of its second amended complaint is **GRANTED** in part and **DENIED** in part, consistent with the above rulings by the Court. [Doc. #29]

**IT IS FURTHER ORDERED** that Joyce's motion to dismiss Counts VIII, IX,

and X of the second amended complaint is **GRANTED** as to the request for mental anguish damages in Count X, and **DENIED** in all other regards. Joyce's alternative motion for a more definite statement is also **DENIED**. [Doc. #14]

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of September, 2009.